Kenneth **OLDROYD** et al., Plaintiffs,

v.

George F. **KUGLER**, Jr., Defendants.

Civ. A. No. 1002–70.

United States District Court,
D. New Jersey.

Dec. 17, 1970.

Norman L. Cantor, Newark, N. J., for plaintiffs.

George F. Kugler, Jr., by George T. Dougherty, Trenton, N. J., for defendants.

Before McLAUGHLIN, Circuit Judge, and WORTENDYKE and COHEN, District Judges.

## MEMORANDUM ORDER

### PER CURIAM.

We have before us a motion on behalf of the defendants to dismiss the action for lack of jurisdiction because plaintiffs have failed to show irreparable injury; because they have an adequate remedy under State law; because they have failed to exhaust their available State remedies; because this court does not have jurisdiction to enjoin State court criminal proceedings where there is as here an adequate remedy at law; because the complaint fails to state a claim on which relief can be granted as no violation by defendants of any legal right of plaintiffs has been shown; because comity calls for this court to abstain from exercising jurisdiction in this matter; because plaintiffs have not raised a substantial federal question and because plaintiffs are not truly representative of a class within the meaning of Rule 23, F.R.Civ.P.

The New Jersey statute in question is N.J.S. 2A:107–2 which states that:

"Any person who publicly mutilates, tramples upon or otherwise defaces or defiles any flag, standard, color or ensign of the United States or state flag of this state, whether the same be public or private property, is guilty of a misdemeanor."

N.J.S. 2A:107–3 defining flag, standard, color or ensign says:

"The words 'flag, standard, color or ensign', as used in this chapter, include any picture or representation, of whatever substance or size, evidently purporting to be a flag, standard, color or ensign of the United States, or state flag of this state, or a picture or representation of either, upon which shall be shown the colors, the stars and stripes, in any number of either, or by which the person seeing the same may without deliberation believe the same to represent the flag, standard, color or ensign of the United States or state flag of this state."

■ We find that the above statute on its face is precise, clear and constitutional. Its language is basic. It affirmatively prohibits mutilation, defacement, or defilement of the United States of America flag. That plain statement of the law cannot be fairly misunderstood. There is no sweeping and unprecise broadening of the respect to be accorded the American flag. The statute simply and clearly affirms the way it has been with our flag since June 14, 1777 when it was adopted as the national emblem of the United States of America.

These plaintiffs aver that they have brought this suit individually and as a class action. They present no credentials of representation of the mentioned class. They make no showing of the existence of such a class. They go on from there to outlining what they name as their reasons why they should have this three judge court pass upon their right to use the First Amendment to sanction what they call their gestures. The latter as alleged in the complaint consist of plaintiff Joseph "flying his flag in front of his house in an inverted position with a red cloth symbolic of blood, flying below." According to "The Columbia Encyclopedia" article on flags p. 663 "the red symbolizes mutiny or revolution." As to the next plaintiff, Medvin, it is said that he displays a small replica of the United States flag upside down in a window of his automobile. There has been no state action whatsoever against him. Plaintiff Oppenheimer alleges that he has "previous-

ly displayed in the window of his automobile, a decal representing a United States flag with a peace symbol superimposed on the stars and stripes". What he calls "a peace symbol" was admitted to be a broken cross turned upside down. There is no allegation that he ever made such a display in New Jersey.

Plaintiff Slovinsky who claims to be a resident of Illinois says that she, with others not named, painted what she designates as a United States flag on their dormitory window at Douglass College, New Jersey. The complaint reads "The flag they painted had thirteen stripes and fifty stars, two of which were red." Those two stars in accepted flag language, above quoted, signify mutiny or rebellion.

Plaintiff Cuffie is referred to in the complaint as having "carried an upside down flag pinned to the back of his shirt."

Finally, it is asserted that "as a demonstration of dissatisfaction with various governmental policies and domestic conditions," (plaintiff) "Kenneth Oldroyd wore pants with several white stars sewn on them and a red and white striped sash." The stars and sash admittedly were parts of an American flag.

On the proclaimed authority of the above exhibitions it is contended that unless this court declares that above quoted New Jersey law to be invalid and unconstitutional and restrains defendants from instituting prosecutions under it, plaintiffs and others will continue to suffer serious and irreparable injury * * * by being deterred from exercising the fundamental right of expression of ideas, attitudes and beliefs and the fundamental right to dissent from the policies of their government." The complaint goes on to allege that the mere existence of the statute "has had and continues to have a chilling effect upon the exercise of basic First Amendment freedoms. This creates a threat of immediate and irreparable injury to the fundamental interest of the nation since free expression—of transcendent value to all society and not merely to those exercising their rights—will be the victim."

■ We find nothing in the complaint to warrant the attempted use of the "chilling effect" language of Dombroski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22. In that case the Louisiana Subversive Activities and Communist Control Law, was at issue. The plaintiffs were the Executive Director of the Southern Conference Educational Fund, Inc., its Treasurer and an attorney for the Fund. The latter as the opinion noted "is active in fostering civil rights for Negroes in Louisiana and other States of the South." The Court affirmatively held that the law involved was overly broad. There is no such situation before us with respect to the New Jersey statute. And there is not the slightest reasonable inference that can be drawn in this matter that New Jersey is not administering the particular law in good faith. As Dombroski held, supra pp. 484, 485, 85 S.Ct. at p. 1120, "It is generally to be presumed that state courts and prosecutors will observe constitutional limits as expounded by this Court, and that the mere possibility of erroneous initial application of constitutional standards will usually not amount to the irreparable injury necessary to justify a disruption of orderly state proceedings."

Hoffman v. United States, 256 A.2d 567 (D.C.Ct.App.1969), construing a statute similar to the one under consideration and dealing with almost identical facts rejected the contention that it was too vague, etc. The only time construction of any of the wordage of the New Jersey statute was ever before the courts of that State occurred in State v. Schlueter, 127 N.J.L. 496, 23 A.2d 249 (1941). There the court defined "defile" as a "lively sense of shaming or an equivalent acquiescent callousness." Hoffman, supra, held regarding that

same word in the District of Columbia law:

"We conclude that the use of the word 'defile' in the subject Statute was intended to include public conduct which brings shame or disgrace upon the flag by its use for an unpatriotic or profane purpose. It is our opinion that the wearing of a shirt which resembles the American flag, under the circumstances of this case, is a physical act which defiles the flag in violation of 18 U.S.C. § 700."

See also Joyce v. United States, 259 A.2d 363 (D.C.Ct.App.1969); United States v. Ferguson, 302 F.Supp. 1111 (N.D.Cal.1969).

Zwickler v. Koota, 389 U.S. 241, 88 S. Ct. 391, 19 L.Ed.2d 444 (1967) and Hodsdon v. Buckson, 310 F.Supp. 528 (Del.Dist.Ct.1970) are in nowise contrary to our view in the instant litigation. The problems in those suits called for Federal intervention. Neither of them touch the New Jersey statute at issue here. See also Cowgill v. California, 396 U.S. 371, 90 S.Ct. 613, 24 L.Ed.2d 590 (1970). Halter v. Nebraska, 205 U. S. 34, 27 S.Ct. 419, 51 L.Ed. 696 (1906) is still the fundamental law of the land in the type of issue before us. Street v. New York, 394 U.S. 576, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1969) is not in conflict with our conclusions. Speech was the heart of that problem. The Court decided that Street may have been unconstitutionally punished for what he said and therefore held that "his conviction cannot be permitted to stand." supra p. 594, 89 S.Ct. p. 1366. That opinion in no way disturbed the Halter rule upholding the state's right to protect the United States flag against the sort of physical acts above outlined. See also People v. Radich, 26 N.Y.2d 114, 308 N.Y.S.2d 846, 257 N.E.2d 30 (1970); Long Island Vietnam Moratorium Committee v. Cahn, 322 F.Supp. 559 (E.D.N.Y.1970); United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968); People v. Burton, 27 N.Y.2d 198, 316 N. Y.S.2d 217, 265 N.E.2d 66 (1970).

 For each and all of the reasons advanced herein it is ordered that this suit be dismissed and this three judge court be dissolved. No costs to be assessed as to either party against the other.