## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

EDWARD D. FRANZ, JR. v. COMMONWEALTH OF VIRGINIA.

January 17, 1972.

Record No. 7705.

Present, All the Justices.

*Robert N. Johnson* (*Harris and Tuck*, on brief), for plaintiff in error.

*Robert L. Simpson, Jr., Assistant Attorney General* (*Andrew P. Miller, Attorney General*, on brief), for defendant in error.

HARRISON, J., delivered the opinion of the court.

Edward D. Franz, Jr. was granted a writ of error to a final judgment entered by the court below finding him guilty of unlawfully mutilating, defiling and defacing an American flag, and sentencing him to serve 12 months in the city jail, with 9 months conditionally suspended.

Section 18.1-425 of the Code of Virginia provides that:

"No person shall publicly burn with contempt, mutilate, deface, defile, trample upon, or by word or act cast contempt upon any such flag, standard, color, ensign or shield."

On the evening of October 8, 1968, about midnight, Lt. Roy A. Price, a member of the police department of Virginia Commonwealth University, was making his nightly rounds. At that time he observed Franz and three to five others in the radio room located in the basement of the Student Center Building. Franz was wearing a red, white and blue vest, which article of clothing the officer suspected was made from an American flag. Investigation by Price and other officers ultimately resulted in the arrest of defendant under a warrant charging that he violated Code § 18.1-425.

There was testimony that prior to this occurrence an American flag had been removed from the University's flag standard. Defendant, age 20, a first-year student at the University, testified that he found a colorful red, white and blue vest, along with remnants of a flag, all balled up in a trash barrel behind a dormitory. He removed the vest and remnants to his room and said that upon examination he realized they came from a flag. He said that the only time he wore the vest was on the occasion when he was observed by Price. In walking to and from the radio room defendant wore a top coat which completely covered the vest. Defendant's explanation for wearing the vest was that he thought it "cool" and that it was "appealing".

Defendant was studying art in the University's Department of Design. Witnesses described him as a former Cub Scout, a former Boy Scout, active in his church, a loyal American citizen, and as one who worked well with colors, forms and objects.

Defendant's assignments of error present only one issue and that goes to the sufficiency of the evidence to sustain his conviction. Defendant argues that the Commonwealth failed to show that the acts complained of were committed publicly; that a flag was used; or that the acts complained of were done with contempt.

■ The act of Franz in wearing the vest in the radio room of a public university, a place frequented by students and others who have business there, and which is visible to persons passing on the outside, is plainly an act publicly done.

There was credible evidence from which the court found that the material and vest found by defendant on the premises of the University were originally a flag of the United States.

■ However, we cannot say that the Commonwealth has shown that the flag was "defiled" by defendant. There is no evidence that Franz removed the flag from the standard, placed it in the trash

can, mutilated it or converted it into a vest. Admittedly he wore the vest. It was an indiscreet, immature and thoughtless act. In doing this he showed a lack of proper respect for the flag, poor taste and poor judgment. But we do not believe the evidence shows he did this to express his contempt for the flag or that he intended thereby to defile or dishonor it.

His explanation that the overall color scheme of the vest fascinated and appealed to him, and that he thought it "cool", is not a very satisfactory one for his act. Nevertheless, when considered along with other evidence, it is consistent with his disclaimer of contemptuousness or of any intent to dishonor the flag.

The country which is symbolized by the American flag has evolved a system of justice under which every man accused of a criminal offense is presumed to be innocent, and every fact necessary to a conviction must be proved beyond a reasonable doubt. The evidence establishing guilt must not only be consistent with the guilt of the accused, but must exclude every reasonable hypothesis of his innocence.

Cloaking the defendant with these presumptions, as he is entitled to be, we conclude that the evidence is not sufficient to sustain his conviction. Accordingly, the judgment of the lower court is reversed and the warrant dismissed.

*Dismissed.*

Carrico, J., dissenting

I dissent. I believe the defendant's act of publicly wearing a vest fashioned from the actual flag of the United States was a violation of Code § 18.1-425 (Cum. Supp. 1971).

I think it necessary to make clear that there are no constitutional questions involved in this case. The defendant conceded, in the trial court, the constitutionality of Code § 18.1-425, and he has made no claim that the statute has been unconstitutionally applied to him. So my decision, like the majority's, is based solely upon the factual aspect of the case.

The majority holds, without so saying, that the statute in question is *malum in se* rather than *malum prohibitum*. I agree with that. Thus, for the conviction to be sustained, it must appear not only that the defendant committed some act which cast contempt upon the flag but also that he intended the flag should thereby be debased. The majority appears to concede that the defendant's act of wearing the flag-vest did cast contempt upon the flag, but it reverses be-

cause the necessary intent to defile fails to appear from the record. I disagree with that.

The flag is defiled by any act which dishonors it. When the act is one which by its very nature dishonors the flag or is one which any reasonable person would consider a dishonor,[1] the intent to defile should be presumed. This is based simply upon the established principle of law that a person is presumed to intend the ordinary consequences of his voluntary acts.

Here, the defendant knew before he wore the vest that "this [was] the United States flag." He also knew that the flag had been previously mutilated by being cut up and sewn into a vest. And he knew that "it was kinda wrong" to wear the vest.

I think any reasonable person would consider it an act of dishonor to wear publicly a vest fashioned from the flag of the United States, knowing that the garment had been a flag which had been previously mutilated by being cut up and sewn into a common article of clothing. To commit such an act under these circumstances is to intend to defile the flag. So I find the necessary contemptuous intent on the part of the defendant to be sufficiently supplied by the combination of his act and his knowledge.

The case of *People* v. *Cowgill*, 274 Cal. App. 2d 923, 78 Cal. Rptr. 853 (1969), *appeal dismissed*, 396 U.S. 371 (1970), supports affirmance of the conviction of the defendant here. In that case, the accused was convicted of violating a flag statute similar to ours for publicly wearing a vest made from a flag. It is true that the accused admitted that he had caused the flag to be cut up and sewn into a vest. But it was the public wearing of the vest that formed the basis of affirmance of the conviction, the California court stating:

> ". . . It is not necessary to determine whether the mutilation stopped with the cutting and sewing in private or whether the entire act of cutting, sewing and wearing were so intertwined as to be one act, at least part of which was done publicly. In any event, we feel the evidence amply supports the implied finding of the trial court that defendant's acts defiled the flag." 78 Cal. Rptr. at 854.

I would affirm.

I'ANSON, J., joins in this dissent.

---

[1] *People* v. *Radich*, 26 N.Y.2d 114, 123, 257 N.E.2d 30, 35, 308 N.Y.S.2d 846, 852-53 (1970), *aff'd. by equally divided court*, 401 U.S. 531 (1971).